IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MONROE, et al.,

        Plaintiffs,

v.                                        No. 07-1055

MCNAIRY COUNTY,
TENNESSEE, et al.,

        Defendants.

_____

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY
THROUGH THE DATE OF ENTRY OF THIS ORDER,
AND REFERRING THIS MATTER TO THE MAGISTRATE JUDGE
FOR THE ESTABLISHMENT OF A NEW SCHEDULING ORDER

_____

       The Plaintiffs, Dale Monroe and Amanda Dabbs, individually, and as the next friend of

C.B.D. and M.D.D., her minor children, filed this action pursuant to 42 U.S.C. § 1983, alleging that

the Defendants violated the Fourth, Fifth, and Fourteenth Amendments to the United States

Constitution by engaging in a pattern of harassment against them as a result of a custody dispute

between Ms. Dabbs and her ex-husband, Defendant Bobby Dabbs.[1]  In addition, the Plaintiffs have

_____

[1] Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."  42 U.S.C. § 1983.  In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law."  Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).  "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred."  Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

brought various state law claims.[2]  Before the Court is the motion of Defendants Ricky Roten, Scott

Heathcock, Allen Strickland, Bobby Crumby, Kim Jordan f/k/a Kim Hurley, A.C. Felker, Dustin

Brown,[3] and McNairy County, Tennessee, for summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure.  (Docket Entry ("D.E.") No. 57.)  The Plaintiffs have responded and this

motion is now ripe for disposition.

The Defendants seek summary judgment on numerous grounds, including that Deputies

Heathcock, Strickland, Crumby, Jordan, Felker, and Brown, as government officials, are entitled to

qualified immunity.[4]  In their response, the Plaintiffs argue that because discovery has not been

completed, summary judgment is improper.  According to the Scheduling Order, discovery was due

---

[2] The original Complaint was filed on March 17, 2007.  In an Order entered on March 24, 2007, the Plaintiffs were permitted to file an amended complaint, adding an additional Defendant, the City of Selmer, Tennessee.  The City of Selmer and Defendant Michael Gilbert were dismissed from this lawsuit by Order of the Court entered October 11, 2007.

[3] According to the Amended Complaint, Roten is alleged to be the Sheriff of McNairy County, Tennessee, while Heathcock, Strickland, Crumby, Hurley, Felker, and Brown are all claimed to be Deputy Sheriffs of McNairy County.  (D.E. No. 28, Am. Compl. ¶¶ 4-11.)

[4] As a shield to a § 1983 action, an individual defendant may argue that he is entitled to qualified immunity.  Crockett v. Cumberland Coll., 316 F.3d 571, 579 (6th Cir. 2003).  "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir. 1994).  In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court articulated a two step test to determine whether qualified immunity is appropriate.  Id. at 200-01.  "A court required to rule upon the qualified immunity issue must consider, then, this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right" Id.  If this question is answered in the affirmative, "the next, sequential step is to ask whether the right was clearly established."  Id. at 201.  As to the second step, the court must decide "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted, . . . without regard to [his] underlying intent or motivations."  Soloman v. Auburn Hills Police Dep't, 389 F.3d 167, 173 (6th Cir. 2004) (citations and emphasis omitted).

by July 11, 2008. (D.E. No. 53.) The motion for summary judgment was filed on January 18, 2008. Five months later, the Defendants moved to stay discovery pending resolution of the qualified immunity issue. (D.E. No. 80.)

The Sixth Circuit has held that "summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." Vance v. United States, 90 F.3d 1145, 1148 (6th Cir. 1996) (citing White's Landing Fisheries, Inc. v. Buchholzer, 29 F.3d 229, 231-31 (6th Cir. 1994)). In Skousen v. Brighton High School, 305 F.3d 520 (6th Cir. 2002), however, the court found that a district court committed legal error when it declined to rule on the merits of a motion for summary judgment, which raised the issue of qualified immunity, because discovery had not been completed. Id. at 527. The Sixth Circuit concluded that the district court should have determined

> - prior to permitting further discovery - whether [the] complaint alleged the violation of a constitutional right at all, and if so, whether that right was clearly established at the time of the alleged violation. At that point, the court should have turned to the question of whether any facts material to [the plaintiff's] claims were genuinely at issue, an inquiry that required the court to review the motion and its supporting documents as well as the plaintiff's opposition and its supporting documents. Only then, and only on a finding that material facts were in dispute, was the court at liberty to hold the motion in abeyance pending discovery.

Id. Accordingly, the Court hereby GRANTS the Defendants' motion to stay discovery through the date of entry of this Order.[5] A new discovery deadline will be set by separate Order.

---

[5] The Plaintiffs contend that they must conduct more discovery in order to properly oppose the Defendants' summary judgment motion because the evidence revealed thus far indicates that Sheriff Roten has not been honest about his role in the matter. (D.E. No. 84, Resp. in Opp. to Mot. to Stay Discovery, at 5.) However, because the Defendants did not move for summary judgment on the basis that the sheriff was entitled to qualified immunity and because this Order only addresses the issue of qualified immunity and holds all other questions raised by the summary judgment motion in abeyance, the Plaintiffs' argument fails.

Applying <u>Skousen</u>, the Court will discuss whether the Amended Complaint alleges the violation of clearly established constitutional rights in Section One of this Order and then will turn to whether there are any triable issues of fact as to those claims in Section Two.

I.   <u>Whether the Amended Complaint Alleges the Violation of a Constitutional Right, and If So, Whether that Right Was Clearly Established at the Time of the Alleged Violation</u>

The Plaintiffs claim that the McNairy County Sheriff's Department engaged in a pattern of harassment against Amanda Dabbs on behalf of her estranged husband, Defendant Bobby Dabbs. According to the Amended Complaint, Mr. and Ms. Dabbs were experiencing marital difficulties because Mr. Dabbs was having an affair with Defendant Melanie Pettigrew.  (D.E. No. 28, Am. Compl. ¶ 18.)  As a result, the couple separated in November 2005.  (<u>Id.</u>)  In January 2006, Bobby Dabbs filed a divorce complaint in the General Sessions Court for McNairy County, along with requests for a Notice of Temporary Injunction and a Temporary Parenting Plan.  (<u>Id.</u> ¶ 19.)  Approximately two months later, Amanda Dabbs received a message on her cell phone from Defendant Scott Heathcock.  (<u>Id.</u> ¶ 22.)  When she returned his call, he told her she needed to follow the parenting plan that had been in effect since January.  (<u>Id.</u>)  Amanda Dabbs contends that she had not been notified of the plan before that time.  (<u>Id.</u>)

On April 19, 2006, Ms. Dabbs was allegedly confronted by her estranged husband and McNairy County Sheriff's Deputy Allen Strickland, who "had been looking for her all over the county," in an attempt to get her to hand the children over to Mr. Dabbs.  (<u>Id.</u> ¶ 24.)  In so doing, both Bobby Dabbs and Strickland blocked her car's path with their automobiles.  (<u>Id.</u>)  When Ms. Dabbs refused to relinquish the children, Mr. Dabbs and Deputy Strickland left.  (<u>Id.</u>)  On May 27, 2006, Deputy Heathcock allegedly tried to serve a warrant on Ms. Dabbs at her home, but she did

not open the door.  (Id. ¶ 25.)  Plaintiff Dale Monroe, Amanda Dabbs's father, subsequently called Sheriff Ricky Roten, who advised him that there was no outstanding warrant for his daughter.  (Id. ¶ 26.)  Roten told Monroe that he would speak with Deputy Heathcock about the matter.  (Id.) Monroe scheduled a meeting with the sheriff for the following Monday, at which time Roten told him that Mr. Dabbs had a right to see his children and that he would enforce it.  (Id. ¶ 28.)

On May 31, 2006, Amanda Dabbs's divorce lawyer sent a letter to Roten, informing the Sheriff of the deputies' efforts on behalf of his client's estranged husband and requesting that the Sheriff prevent further interference.  (Id. ¶ 29.)  That same day, Deputy Heathcock drove to Ms. Dabbs's home for the purpose of picking up the children.  (Id. ¶ 30.)  Amanda Dabbs again refused to open her door.  (Id.)  After the deputy eventually left, Ms. Dabbs called her father to inform him of the occurrence and request that he pick up the children so she could go to work.  (Id.)  After obtaining his grandchildren, Monroe was stopped by Deputies Heathcock and A.C. Felker.  (Id. ¶ 31.)  A second police car, containing Deputies Kim Hurley and Bobby Crumby, soon joined the first. (Id.)  Heathcock told Monroe to hand over the Dabbs children.  (Id.)  Monroe asked to see the court order that gave the deputy the authority to take the children.  (Id.)  Heathcock told him he could give up the children or face arrest.  (Id.)  Monroe relented and gave the deputies his grandchildren.  (Id.) Upon calling Roten to complain of the conduct, Monroe was informed that the deputies had acted with the Sheriff's consent.  (Id. ¶ 33.)

Amanda Dabbs alleges that the children were then taken to her estranged husband and his girlfriend.  (Id. ¶ 32.)  Around the same time of these events, Ms. Dabbs was arriving at her job in Selmer, Tennessee.  (Id. ¶ 34.)  As she parked her car, an unmarked sports utility vehicle pulled up and Selmer Police Officer Michael Gilbert exited.  (Id.)  He informed her that there was an arrest

warrant for her.  (Id.)  When Ms. Dabbs questioned the veracity of that statement, Gilbert told her he would confirm the warrant and then left.  (Id.)[6]

On September 18, 2006, Amanda Dabbs arrived at the McNairy County Criminal Justice Complex parking lot for a prearranged transfer of the children to their father.  (Id. ¶ 35.)  Bobby Dabbs was already in the parking lot when she arrived, along with his girlfriend.  (Id.)  Defendant Deputy Dustin Brown was standing next to Bobby Dabbs's car, speaking with the other two Defendants.  (Id.)  Upon seeing Ms. Pettigrew, Amanda Dabbs refused to hand over her children because a previous order issued by the General Sessions Court of McNairy County stated that Ms. Pettigrew could only be in the presence of the children if she and Mr. Dabbs had married.  (Id.)  When the Defendants were unable to provide proof of their marriage, Ms. Dabbs drove out of the parking lot and was subsequently pulled over by Deputy Brown.  (Id.)  Amanda Dabbs persisted in her refusal to turn over her children to her former husband without proof that he had married his girlfriend.  (Id.)  While she was being detained by Deputy Brown, Ms. Dabbs called her father to let him know that she had again been stopped by a policeman over the issue of custody.  (Id. ¶ 36.)  Monroe then called the Sheriff to inform him of this, but Roten indicated that he did not believe Monroe.  (Id.)

The Plaintiffs assert that the foregoing allegations establish violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  The Defendants argue that, at most, the allegations support a finding that the Fourth Amendment was violated, not the Fifth or the Fourteenth.  In their response to the Defendants' motion for summary judgment, the Plaintiffs clarify

---

[6] Defendant Michael Gilbert's conduct was the subject of a previous motion for summary judgment, which the Court granted, holding that Gilbert's actions did not violate the Plaintiffs' constitutional rights and dismissing all claims against him, and, by extension, his employer, the City of Selmer.  (D.E. No. 51.)

that they are invoking the Fifth Amendment's protection against the deprivation "of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Fifth Amendment, however, constrains only the actions of the *federal government*. Scott v. Clay County, 205 F.3d 867, 873 n.8 (6th Cir. 2000). Because the Plaintiffs have not identified a federal government official or entity as a defendant, they have not alleged a violation of the Fifth Amendment. The Court therefore GRANTS the Defendants' motion for summary judgment on all claims premised on the Fifth Amendment. See Skousen, 305 F.3d at 527 (holding that when courts evaluate motions for summary judgment on the basis of qualified immunity before discovery is completed, they must decide first whether the complaint alleges the violation of a clearly established constitutional right).

The Plaintiffs state that their Fourteenth Amendment claim rests upon the allegation that the Defendants did not equally enforce civil child custody orders. (D.E. No. 70, Resp. in Opp., at 26.) The Court therefore presumes that they intended to bring a "class of one" case, wherein they must show that they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 549 (6th Cir. 2007); see also Engquist v. Oregon Dep't of Agric., _U.S. _, 128 S. Ct. 2146, 2153 (2008) (noting that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one'"). The Plaintiffs have alleged no facts in their Amended Complaint that, if proven, would show that the Defendants did not equally enforce "civil orders . . . upon Robert Dabbs and any other person involved in child custody or visitation matters in McNairy County, Tennessee." (D.E. No. 70, Resp. in Opp., at 26.) The Plaintiffs' allegations focus solely on their own treatment. Because the Amended Complaint does

not, therefore, articulate a violation of any right guaranteed by the Fourteenth Amendment, see Bell Atlantic Corp. v. Twombly, _ U.S. _ , 127 S. Ct. 1955, 1964-65 (2007) (holding that plaintiffs must provide sufficient factual allegations to "raise a right to relief above the speculative level"), the Court GRANTS the Defendants' motion for summary judgment as to that claim. See Skousen, 305 F.3d at 527.

Having determined that the facts alleged in the Amended Complaint do not articulate a violation of the Fifth or Fourteenth Amendments, the Courts turns to the Defendants' alleged violation of the Fourth Amendment. Amanda Dabbs contends that her Fourth Amendment rights were violated on three occasions: first, when her car was blocked in a driveway by the vehicles of Deputy Strickland and her former husband on April 19, 2006; second, when Deputy Brad Smith initiated a vehicle stop to inquire about child visitation matters that same day; and third, when she was pulled over on September 18, 2006, by Deputy Brown after she refused to hand the children over to Robert Dabbs because he could not produce proof that he and Melanie Pettigrew had married. (D.E. No. 70, Resp. in Opp., at 18-19.)

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "The Fourth Amendment permits an officer to stop and briefly detain an individual for an investigative purpose if the officer has a reasonable suspicion supported by articulable facts that the individual is engaged in criminal activity." Krantz v. City of Toledo Police Dep't, 197 F. App'x 446, 452 (6th Cir. 2006) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). "The dual inquiry for evaluating the reasonableness of an investigative stop requires examination of 'whether the officer's action was justified at its inception, and whether it was reasonably related in

scope to the circumstances which justified the interference in the first place.'" <u>United States v. Perez</u>, 440 F.3d 363, 369 (6th Cir. 2006) (quoting <u>Terry</u>, 392 U.S. at 20).

"An ordinary traffic stop is like an investigative detention, the scope of which is governed by <u>Terry</u> principles." <u>Id.</u> at 370. Temporary detention of individuals during a traffic stop, however brief, constitutes a seizure under the Fourth Amendment. <u>Id.</u> at 369 (citation omitted). In determining whether the detaining officers could reasonably suspect the occupant of the car of criminal activity, courts consider the totality of the circumstances. <u>United States v. Ridge</u>, 329 F.3d 535, 540 (6th Cir. 2003). "A citizen's right to be free from traffic stops based on less than reasonable suspicion is a clearly established right." <u>Smith v. Williams</u>, 78 F.3d 585, at *6 (6th Cir. 1996) (unpublished table decision) (citing <u>Terry</u>, 392 U.S. at 1).

The Court finds that the Plaintiffs' allegations that Amanda Dabbs's vehicle was stopped on April 19, 2006, by Deputy Strickland, and September 18, 2006, by Deputy Brown, even though the officers who conducted the investigatory stops had no reason to suspect her of committing a crime, may form the basis of a violation of her clearly established Fourth Amendment rights. As to other alleged Fourth Amendment violations the Plaintiffs discuss in their response to the Defendants' motion, the Court notes that the Amended Complaint contains no mention of the fact that Ms. Dabbs was pulled over on April 19, 2006, by a Deputy Brad Smith. Thus, because these facts were omitted in the Amended Complaint, the Court cannot hold that the Plaintiffs have articulated a violation of a clearly established Fourth Amendment right. <u>See</u> <u>Skousen</u>, 305 F.3d at 527.

Ms. Dabbs has also brought Fourth Amendment claims on behalf of her children because they were both in the car with her during the April 19, 2006 traffic stop alleged in the Amended Complaint. (D.E. No. 70, Resp. in Opp., at 20.) In addition, she has brought a Fourth Amendment

claim on behalf of her daughter, M.D.D., who was with her when she was pulled over by Deputy Brown on September 18, 2006. (Id.)  The United States Supreme Court recently clarified that when the police make a traffic stop, a passenger in the car, like the driver, is seized for Fourth Amendment purposes and so may challenge the stop's constitutionality.  Brendlin v. California, _ U.S. _,127 S. Ct. 2400, 2406-07 (2007).  As the Court noted in Brendlin, it had previously observed "over and over in dicta that during a traffic stop an officer seizes everyone in the vehicle, not just the driver." Id. at 2406; see also Perez, 440 F.3d at 369 (holding a month before the events of April 19, 2006, took place that "[b]ecause [a traffic stop] affects the Fourth Amendment interests of all the occupants, . . . the driver and . . . [the] passenger may each challenge his detention during the stop of the [vehicle]").  Thus, M.D.D.'s allegation that she was in the car with her mother when Deputy Brown stopped Ms. Dabbs on September 18, 2006, and both children's claim that they were present during the April 19, 2006 traffic stop, articulate a violation of a clearly established Fourth Amendment right.  See Skousen, 305 F.3d at 527.

Dale Monroe contends that his Fourth Amendment rights were violated when his car was pulled over by authorities on May 31, 2006.  (D.E. No. 70, Resp. in Opp., at 20.)  The Amended Complaint states that he was commanded to exit his vehicle, which contained his daughter's children, and advised that he had to relinquish them to the deputies.  (D.E. No. 28, Am. Compl. ¶ 31.)  When Monroe asked to see the court order that authorized the removal of the children, he was threatened with arrest.  (Id.)  Thus, he surrendered the children, who were then placed in a patrol car and delivered to their father.  (Id.)  These facts also form the basis for the minor Plaintiffs' other Fourth Amendment claims, brought on their behalf by their mother.  (D.E. No. 70, Resp. in Opp., at 19-20.)

The Sixth Circuit has noted in dicta that the removal of a child from a parent's custody "is a seizure for Fourth Amendment purposes, which is constitutionally reasonable if it is pursuant to a court order, is supported by probable cause, or is justified by exigent circumstances." Krantz, 197 F. App'x at 453 n. 5 (citations omitted); see also Bennett v. Town of Riverhead, 940 F. Supp. 481, 488 (E.D.N.Y. 1996) (holding in the context of a domestic dispute over visitation rights that a child's claim that she was seized in violation of the Fourth Amendment was inappropriate for summary judgment where the mother disputed the defendants' contention that she had consented to the removal of her daughter).[7]

Several courts have held that a child's right to be free from such seizures is clearly established. See Burgess v. Houseman, 268 F. App'x 780, 783 (10th Cir. 2008) ("The law was clearly established, prior to the events in question, that children enjoy Fourth Amendment rights to be free from seizure, including the improper removal from their home.") (citing J.B. v. Wash. County, 127 F.3d 919, 928-29 (10th Cir. 1997)); Wooley v. City of Baton Rouge, 211 F.3d 913, 925 (5th Cir. 2000) (holding that it was clearly established that minors have a Fourth Amendment right to be free from seizure where there is no warrant, no probable cause, and the child is not in imminent danger of harm); see also O'Donnell v. Brown, 335 F. Supp. 2d 787, 807 (W.D. Mich. 2004) (noting that government officials may take a child into custody pursuant to a court order or under exigent circumstances).

---

[7] In this case, the children were removed from the temporary care of a grandparent, rather than the custody of a parent. However, while it could find no cases directly on point, the Court does not find that this distinction is legally significant, because Monroe was caring for the children at the behest of his daughter and government officials cannot circumvent the Fourth Amendment by seizing minors when they happen to be temporarily supervised by someone other than a parent.

The Sixth Circuit has issued no opinion that outlines the right it alluded to in Krantz. Nonetheless, it should be clear to a reasonable officer that the Fourth Amendment protects children from being seized at the behest of a parent involved in a custody dispute under the circumstances alleged in the Amended Complaint, where there was no court order, nor any indication that the children were in danger. See Sample v. Bailey, 409 F.3d 689, 699 (6th Cir. 2005) (recognizing that the Supreme Court has held that "'in an obvious case, [general] standards can 'clearly establish' the answer, even without a body of relevant case law.'") (quoting Brosseau v. Hogan, 543 U.S. 194, 199 (2004)). Accordingly, in light of the fact that the Amended Complaint provides no facts that would allow the Court to conclude that the seizure of the children was constitutionally reasonable, it states a legally cognizable Fourth Amendment claim based on a clearly established right. Furthermore, because the Amended Complaint alleges that removing the children was apparently the only justification for pulling Monroe over, the traffic stop would have been, by extension, a violation of his clearly-established Fourth Amendment rights.

II.     Whether There Are Material Facts At Issue

In accordance with Skousen, the Court now turns to "the question of whether any facts material to [the Plaintiffs'] claims [are] genuinely at issue, an inquiry that require[s] [it] to review the motion and its supporting documents as well as the [Plaintiffs'] opposition and its supporting documents." 305 F.3d at 527. The Court will examine each of the Plaintiffs' Fourth Amendment claims in turn.

A.     Amanda Dabbs

As to the April 19, 2006 traffic stop that is described in the Amended Complaint, the Defendants allege that Ms. Dabbs's claim must fail because it is premised on a falsehood: according

to the Defendants, Deputy Strickland, the officer whom Amanda Dabbs accuses of pulling her over, worked as a McNairy Jail Administrator and was on duty at the jail from 7:40 a.m. until 2:40 p.m. on that date. (D.E. No. 57, Mem. in Supp., at 16-17.) In support, the Defendants have submitted Deputy Strickland's affidavit and his time sheet from April 2006. (D.E. No. 57, Aff. of Strickland & Ex. to Aff. of Strickland.) Thus, Strickland denies participating in any of the events alleged to have occurred on April 19, 2006. (D.E. No. 57, Mem. in Supp., at 17.) In her own affidavit, Amanda Dabbs affirms her belief that the officer who blocked her vehicle into the driveway that day was Allen Strickland. (D.E. No. 70, Aff. of Amanda Dabbs ¶ 2.) Neither the Plaintiff's affidavit, nor the Amended Complaint, state when the traffic stop allegedly occurred.

Viewing the facts in the light most favorable to the non-moving party, the Court finds that there is an issue of material fact as to whether it was Deputy Strickland who detained Ms. Dabbs on April 19, 2006.[8] The parties have submitted contradicting affidavits. On summary judgment, courts "may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). The timecard submitted by the Defendants does not resolve this factual dispute, because the incident could have taken place when he was not on duty at the jail.

Turning to the allegedly unconstitutional seizure of Amanda Dabbs on September 18, 2006, the Court finds that there is also a triable issue of fact as to the events of that day. As noted above, Ms. Dabbs claims that she was pulled over by Deputy Brown after she refused to hand over the children to her ex-husband because he had not complied with an order of the General Sessions Court of McNairy County requiring him to have married Ms. Pettigrew before the couple could be in the

---

[8] The Defendants only contend that Ms. Dabbs was never pulled over that day, not that her allegations, if true, do not articulate the violation of a clearly established constitutional right. (See D.E. No. 57, Mem. in Supp., at 17-18.)

presence of the children together. According to Brown's affidavit, he was merely present in the parking lot where the transfer was supposed to take place to serve Ms. Pettigrew with a subpoena. (D.E. No. 57, Aff. of Brown ¶ 4.) When the Plaintiff arrived, he drove over to the end of the parking lot where she had parked, and, at Mr. Dabbs's request, told Ms. Dabbs that her ex-husband and Ms. Pettigrew were in fact married and asked whether Mr. Dabbs could have the children. (Id. ¶ 8.) According to the Defendant, Ms. Dabbs told him that her lawyer advised her that she did not have to turn over the children because Mr. Dabbs and Ms. Pettigrew could not be married, since the Dabbs's divorce was not final. (Id. ¶ 10.) Ms. Dabbs then drove away. (Id. ¶ 11.) Deputy Brown contends that he did not follow the Plaintiff or pull her over. (Id. ¶ 12.) Amanda Dabbs has submitted an affidavit that contradicts Deputy Brown's sworn statements, claiming that he pulled her over after she had exited the parking lot, using his "blue lights." (D.E. No. 70, Aff. of Amanda Dabbs ¶ 5.)

Deputy Brown's version of events do not give rise a Fourth Amendment violation. See United States v. Dotson, 49 F.3d 227, 230 (6th Cir. 1995) (stating that a consensual police-citizen encounter, wherein an officer seeks the voluntary cooperation of a citizen requires no suspicion of any wrongdoing). According to the deputy, he merely approached Ms. Dabbs in the public parking lot to pass along a message and inquire whether she would hand over the children. As the Sixth Circuit has recognized "'[l]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking [her] if [she] is willing to answer some questions [or] by putting questions to [her] if the person is willing to listen . . . .'" United States v. Flowers, 909 F.2d 145, 147 (6th Cir. 1990) (quoting Florida v. Royer, 460 U.S. 491, 497 (1983)).

Amanda Dabbs's version of the events, if true, may support a finding that Deputy Brown violated the Plaintiff's clearly established Fourth Amendment rights by engaging her in a unlawful traffic stop. As stated above, the temporary detention of an individual during a traffic stop, however brief, constitutes a seizure under the Fourth Amendment. Perez, 440 F.3d at 369 (citation omitted). The Defendants do not argue that Ms. Dabbs was in violation of any court order or that Deputy Brown had any reasonable suspicion that she had violated any law. They contend only the deputy's actions in seizing Amanda Dabbs were objectively reasonable in light of the fact that Bobby Dabbs had filed a complaint. (D.E. No. 57, Mem. in Supp., at 26.) However, their Statement of Facts contains no mention of any complaint filed by Mr. Dabbs against his estranged wife that was unresolved at that time. It only discusses complaints he filed on May 27 and May 31, 2006, which were presumably resolved when several other deputies seized the Dabbs children and delivered them to their father. (See D.E. No. 57, Defs.' Statement of Facts.) Thus, the Defendants have not provided the Court with any evidence that would allow it to conclude that Deputy Brown's alleged actions in undertaking the traffic stop were objectively reasonable.

B.    The Dabbs Children

Because there are material issues of fact surrounding the events of April 19 and September 18, 2006, the Court also denies the motions of Deputy Brown and Deputy Strickland for qualified immunity as to the Fourth Amendment claims brought against them on behalf of the Dabbs children that are based on the allegedly unconstitutional traffic stops that took place on those days. By contrast, there are no triable issues of fact as to the events surrounding the May 31, 2006 traffic stop that resulted in the seizure of the minor Plaintiffs, although the parties' accounts do not overlap entirely.

Deputy Heathcock claims that Bobby Dabbs filed two complaints, the first on May 27, the second on May 31, asserting that his estranged wife had failed to bring him their children on days when he had custody pursuant to the parenting plan. (D.E. No. 57, Aff. of Heathcock ¶¶ 4, 6.) Deputy Heathcock subsequently pulled over Monroe on May 31, allegedly because he believed that Ms. Dabbs would be in the car and wrongly believed there was an arrest warrant issued against her. (Id. ¶ 8.) After seeing that the Dabbs children were in the car with their grandfather, the deputy decided to seize them because he thought the terms of the parenting plan had been violated. (See id. ¶ 14 ("Knowing the terms of the Parenting Plan Order, I informed Monroe that a parenting plan order had been presented to the Sheriff's Department, and that the children were not in the custody of either custodial parent, and that I would have to return the children to a custodial parent.").)

Heathcock contends that Monroe did not object to the seizure of the children. (Id.) Monroe's own affidavit, however, flatly contradicts that assertion. (D.E. No. 70, Aff. of Monroe ¶ 3 (stating that he was ordered out of the car by Deputy Heathcock, who had his hand on his gun, and that he cooperated with the deputies out of fear that he or the children would be harmed).) Furthermore, Monroe alleges that after the children were taken, he called Sheriff Roten to report the seizure, and was told by the sheriff that he had already heard of the incident. (Id. ¶ 4.) Referring to an earlier conversation he had with Monroe, Sheriff Roten continued, "I told you something was going to happen if that boy [Defendant Bobby Dabbs] didn't get to see his kids." (Id.)

The Plaintiffs note that the Deputy Heathcock refused to give Monroe a copy of the order that gave him authority to seize the children. (Id. ¶ 3.) Furthermore, they contend that the parenting plan in effect did not give Deputy Heathcock such authority. (D.E. No. 70, Pls.' Resp. to Defs.' Statement of Facts ¶ 17.) That plan provided that the children would reside with their mother on

16

Monday, Tuesday, Saturday, and Sunday of the first week after the plan went into effect, and with their father on Wednesday, Thursday, and Friday. (D.E. No. 57, Ex. to Aff. of Heathcock ¶ 2.) The following week, the days the children were to spend with their parents would be reversed. (Id.) Thereafter, the Dabbses were to alternate each week in accordance with that schedule until a permanent parenting plan was executed. (Id.)

The parenting plan was signed on January 20, 2006, by a judge of the General Sessions Court of McNairy County, Tennessee. (Id. at 4.) It was also signed by Bobby Dabbs, but not Amanda Dabbs, and was seemingly submitted by Mr. Dabbs's attorney. (See id.) As noted above, Ms. Dabbs claims that she did not become aware of its existence until Deputy Heathcock told her during a March 2006 telephone conversation that she needed to abide by its terms. (D.E. No. 28, Am. Compl. ¶ 22.) The parenting plan did not provide that law enforcement officers had the authority to ensure that the parties comply with its terms.

There are few published decisions with facts similar to those in this case. Two federal courts of appeal have, however, recently analyzed Fourth Amendment claims brought on behalf of minors who claimed they were unlawfully seized under the guise of enforcing a custody order. In Dunn v. City of Elgin, 347 F.3d 641, 650-51 (7th Cir. 2003), the Seventh Circuit held that police officers who seized a minor in violation of the Fourth Amendment in an attempt to enforce an unenforceable out-of-state custody order were entitled to qualified immunity. The court reasoned that although the officers' actions were objectively unreasonable, the minor's right was not clearly established, given the paucity of cases involving similar facts and the split of authority "regarding whether an officer may act reasonably when acting beyond his or her jurisdiction." Id.; see also Glenn v. Meyer, No. 01-C-458-C, 2002 WL 32345376, at *7 (W.D. Wis. July 16, 2002) (holding that it was not clearly

established that transferring custody of the plaintiff's child to his father on the basis of an out-of-state order that required the plaintiff to show cause why custody should not be transferred to the father violated the plaintiff's Fourteenth Amendment rights).

The Fifth Circuit reached the opposite conclusion in <u>Wooley</u>, which also involved the enforcement of a custody order from another jurisdiction. 211 F.3d at 917-18. In <u>Wooley</u>, the police officers seized a child on behalf of its grandparents, who produced an order from a different parish that temporarily transferred custody to them, although the mother's companion showed them a conflicting custody order from the parish where the minor resided. <u>Id.</u> The order granting the grandparents custody was vacated shortly thereafter on grounds of improper venue. <u>Id.</u> at 918. The mother and her companion brought a § 1983 suit against the officers, alleging that the child's Fourth Amendment rights and their Fourteenth Amendment due process rights were violated. <u>Id.</u> The court denied the officers' bid for qualified immunity as to the Fourth Amendment claim brought on behalf of the minor, holding that the officers could not have reasonably relied on the order provided by the grandparents, because a statute in Louisiana, the state where the events took place, requires a civil warrant to be issued before a child can be seized under such circumstances. <u>Id.</u> at 926. In addition, the court found that there was no "governmental interest sufficient to justify dispensing with constitutional protections," given that there was no evidence that the minor was in imminent danger and that the need to preserve the peace did not provide an exception to the Fourth Amendment. <u>Id.</u> at 925.

While these cases certainly demonstrate that children's Fourth Amendment rights may be violated when they are seized by police in an attempt to enforce a custody order, <u>Dunn</u> and <u>Wooley</u> are not analogous the instant case, because the Dabbs children were not seized pursuant to an order

18

that was obviously unenforceable in the jurisdiction where they resided. Instead, Deputy Heathcock took the children into custody based on his reading of a *valid* custody order. That order notably did not provide that law enforcement should assist in its enforcement. Nor was there any contention that the children were in imminent danger.

Even assuming that Deputy Heathcock misinterpreted the requirements of the parenting plan or that it did not grant him the authority to seize the Dabbs children, however, the Court cannot conclude that he was either plainly incompetent or that he knowingly violated the minor Plaintiffs' Fourth Amendment rights and is therefore not entitled to qualified immunity. See Humphrey v. Mabry, 482 F.3d 840, 847 (6th Cir. 2007) (citation omitted). While children have a Fourth Amendment right to be free from seizure except pursuant to a court order, under exigent circumstances, or when there is probable cause, as the Sixth Circuit indicated in Krantz, 197 F. App'x at 453 n. 5, the contours of that right are as of yet unclear. See Anderson v. Creighton, 483 U.S. 635, 640 (1987) (holding that to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). The Plaintiffs have not cited any cases that have held that a misguided attempt by police to enforce the terms of a custody order is clearly unconstitutional or that a separate order mandating enforcement by authorities is required. Thus, without any guidance from the courts, it was not objectively unreasonable for Deputy Heathcock to assume that he had the authority to enforce the parenting plan.

As for the other deputies who were present at the scene, the Defendants argue that they are also entitled to qualified immunity. (D.E. No. 57, Mem. in Supp., at 23.) According to the Defendants, Deputies Felker, Hurley, and Crumby passively observed Deputy Heathcock's

interaction with Monroe.  (Id.)  The Plaintiffs argue that they are not entitled to qualified immunity because they had a legal duty to intervene and stop the constitutional violations committed by Deputy Heathcock.  (D.E. No. 70, Resp. in Opp., at 25-26.)  However, because the Court has held that any Fourth Amendment violation committed by the deputy was not clearly established at the time, it cannot conclude that Defendants Felker, Hurley, and Crumby had a duty to intervene.  See Barton v. Narrod, 106 F.3d 1289, 1299 (6th Cir. 1997) (finding that where there was no clearly established right being violated, there could be no duty to intervene).  Thus, the Court finds that Felker, Hurley, and Crumby are entitled to qualified immunity as to the Fourth Amendment claims brought against them on behalf of the Dabbs children that are based on the May 31, 2006 traffic stop.

C.    Dale Monroe

The Defendants argue that Deputy Heathcock is entitled to qualified immunity for his role in stopping Dale Monroe on May 31, 2006, because he had a good-faith belief that there was an outstanding arrest warrant against Amanda Dabbs and suspected that she was in the car with her father.  (D.E. No. 57, Mem. in Supp., at 24.)  According to Heathcock, he had personally seen the warrant.  (D.E. No. 57, Aff. of Heathcock ¶ 9.)  The Plaintiffs argue, however, that the deputy failed to allege any facts that supported his belief that she would be in her father's car.  (D.E. No. 70, Resp. in Opp., at 21.)  The Defendant's affidavit simply states that he "pulled over a vehicle driven by Plaintiff Monroe, believing that Plaintiff Amanda Dabbs would be in the vehicle with Dale Monroe."  (D.E. No. 57, Aff. of Heathcock ¶ 8.)

The Supreme Court noted in Terry that to justify an intrusion into a suspect's Fourth Amendment rights, a police officer "must be able to point to specific and articulable facts which,

taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21. The Court agrees with the Plaintiffs that Heathcock could not rationally infer from the fact that Amanda Dabbs is Dale Monroe's daughter that she would be in the car with him. Absent any other indication that the subject of the arrest warrant was traveling with Monroe, the Court finds that Heathcock was not justified in seizing Amanda's father.

Even if Deputy Heathcock had reason to believe that Ms. Dabbs was in Monroe's car, the Defendant is still not entitled to qualified immunity because there is an issue of fact as to whether he knew at the time of the traffic stop that the arrest warrant was invalid. The warrant was prepared by Heathcock earlier that same day on the basis that she was in violation of Tenn. Code. Ann. § 39-13-306, which prohibits custodial interference, but it was never presented to a judicial officer for a probable cause determination. (See D.E. No. 70, Resp. in Opp., at 22; Ex. to Aff. of Roten, Arrest Warrant.) Sheriff Roten contends that the arrest warrant was never presented for issuance because he received conflicting legal opinions from the judge who signed the parenting plan, from County Attorney Craig Kennedy, and from a third attorney, on whether Ms. Dabbs's actions violated the statute. (D.E. No. 70, Aff. of Roten ¶ 22.) It is not clear from the record when Heathcock found out that the arrest warrant would not be issued. If the deputy knew when he executed the traffic stop that there was no arrest warrant against Ms. Dabbs, his actions would have violated Monroe's clearly established Fourth Amendment rights, since executing the arrest warrant was the only justification he gave for pulling the Plaintiff over. Accordingly, the Defendants' motion for summary judgment on the basis that Heathcock is entitled to qualified immunity for his involvement in seizing Monroe during the May 31, 2006 traffic stop is DENIED. The Court finds, however, that Deputies Felker, Hurley, and Crumby are entitled to qualified immunity based on their limited

involvement in the traffic stop, because the Plaintiffs have not provided any evidence that they knew that Monroe's seizure was unlawful.  See Sornberger v. City of Knoxville, 434 F.3d 1006, 1019 (7th Cir. 2006) ("For liability to attach to an officer's failure to intervene, that officer must have (1) had reason to know that a citizen was unjustifiably arrested, and (2) had a realistic opportunity to intervene to prevent that harm from occurring.") (citation omitted).

<u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS the Defendants' motion for dismissal of the Plaintiffs' Fifth and Fourteenth Amendment claims.  It DENIES the motion of Defendant Heathcock for summary judgment on the basis that he is entitled to qualified immunity as to the claim brought by Plaintiff Dale Monroe; and further DENIES the motion of Defendants Heathcock and Strickland for summary judgment as to the claims brought by Amanda Dabbs, individually, and on behalf of her children.  The motion of Heathcock, Felker, Hurley, and Crumby for summary judgment as to the claims brought on behalf of the children arising from the May 31, 2006 traffic stop is GRANTED.  In addition, the Court GRANTS the motion of Felker, Hurley, and Crumby for summary judgment as to Monroe's Fourth Amendment claims.  The Court will hold all other issues raised by the Defendants' summary judgment motion in abeyance until discovery is completed.[9]  At

---

[9] The Defendants recently filed a motion asking the Court to clarify its Order granting the Plaintiffs' motion for an extension of time to file their response, in light of the fact that the motion to extend also asked that the Court delay ruling on the qualified immunity issue until discovery has been completed.  (D.E. No. 81.)  The Plaintiffs conceded in their response to the summary judgment motion, however, that this Court could consider this issue before summary judgment is completed under the standards of Rule 12(b)(6).  (D.E. No. 70, Pls.' Resp., at 2.)  Furthermore, <u>Skousen</u> establishes that the Court is *required* to address the qualified immunity issue raised in the Defendants' motion for summary judgment.  Thus, the Court believes that the present Order elucidates its previous one and therefore DENIES the motion to clarify as MOOT.

that time, the parties will be allowed to amend their arguments on any outstanding issues. This matter is referred to the magistrate judge for the establishment of a new Scheduling Order.

IT IS SO ORDERED this 5th day of August, 2008.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE